Jack Harold JONES, Jr. *v.* STATE of Arkansas

CR 98-1091                                                 8 S.W.3d 482

Supreme Court of Arkansas
Opinion delivered January 6, 2000
[Supplemental opinion on denial of rehearing issued February 10,
2000.* ]

* SMITH, J., not participating.

*Montgomery, Adams & Wyatt, PLLC*, by: *Dale E. Adams*, for appellant.

*Mark Pryor*, Att'y Gen., by: *Teena L. Watkins*, Ass't Att'y Gen. and *Darnisa Evans Johnson*, Sr. Ass't Att'y Gen., for appellee.

DONALD L. CORBIN, Justice. Appellant Jack Harold Jones Jr. was convicted in the White County Circuit Court of the capital murder and rape of Mary Phillips and the attempted

capital murder of Lacy Phillips. Jones was sentenced to death by lethal injection, life imprisonment, and thirty years' imprisonment, respectively, for the crimes. This court affirmed the convictions and sentences in *Jones v. State*, 329 Ark. 62, 947 S.W.2d 339, *cert. denied*, 522 U.S. 1002 (1997). Jones filed a petition for postconviction relief pursuant to Ark. R. Crim. P. 37. The trial court denied the petition. On appeal, Jones raises four points for reversal, three involving the submission of various aggravating circumstances and one pertaining to the admission of expert testimony. Our jurisdiction of this appeal is pursuant to Rule 37 and Ark. Sup. Ct. R. 1-2(a)(8). We affirm.

The facts surrounding these crimes were set out in great detail in this court's previous decision, and we see no need to repeat them here. Suffice it to say that on June 6, 1995, thirty-four-year-old Mary Phillips and her eleven-year-old daughter Lacy were at an accounting office in Bald Knob, where Mary worked as a bookkeeper. Jones entered the business and robbed them at gunpoint. Jones then anally raped and murdered Mary and severely beat and strangled Lacy, leaving her for dead. Lacy lost consciousness for a period of time. She later awakened when police, apparently believing she was dead, were taking photographs of her. The police found Mary's body nude from the waist down, with a cord from a nearby coffee pot wrapped around her neck. Additionally, she had sustained blunt-force head injuries, as well as bruises on her arms and back.

Before discussing the points raised on appeal, we note that to prevail on a claim of ineffective assistance of counsel, the petitioner must show first that counsel's performance was deficient. *Weaver v. State*, 339 Ark. 97, 3 S.W.3d 323 (1999). This requires a showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the petitioner by the Sixth Amendment. *Id.* at 99, 3 S.W.3d at 325. Petitioner must also show that the deficient performance prejudiced the defense; this requires a showing that counsel's errors were so serious as to deprive the petitioner of a fair trial. *Id.* On appeal, this court indulges in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id.* We have repeatedly held that we will not reverse the denial of postconviction relief unless the trial court's findings are clearly erroneous or clearly against the preponderance of the evidence. *See, e.g., Norman v. State*,

339 Ark. 54, 2 S.W.3d 771 (1999) (*per curiam*); *State v. Dillard*, 338 Ark. 571, 998 S.W.2d 750 (1999).

## I. Aggravating Circumstance of Especially Cruel or Depraved Manner

For his first point for reversal, Jones argues that trial counsel was ineffective for failing to object to the submission of the aggravating circumstance that the capital murder was committed in an especially cruel or depraved manner. He asserts that the evidence was insufficient to support such a finding. He also argues that despite trial counsel's failure to object, appellate counsel was ineffective for not pursuing the issue on appeal. *See Bowen v. State*, 322 Ark. 483, 911 S.W.2d 555 (1995), *cert. denied*, 517 U.S. 1226 (1996). Jones concedes that neither argument was raised in his Rule 37 petition. He nevertheless asserts that this point is not procedurally barred pursuant to this court's holding in *Johnson v. State*, 321 Ark. 117, 900 S.W.2d 940 (1995).

In *Johnson*, the appellant raised an issue on appeal that he had not raised in his Rule 37 petition. Moreover, the issue was not argued during the postconviction hearing, nor did the trial court rule on it. Because the appellant had received the death penalty, however, this court determined that it was possible to reach the issue on appeal. This court explained:

> This is an appeal from the trial court's denial of the Rule 37 petition, and our general rule is that specific allegations of ineffectiveness of counsel must be pleaded, and specific issues of ineffectiveness of counsel cannot be raised for the first time on appeal. *Tisdale v. State*, 311 Ark. 220, 227, 843 S.W.2d 803, 807 (1992). *However, in death penalty cases we will consider errors argued for the first time on appeal where prejudice is conclusively shown by the record and this court would unquestionably require the trial court to grant relief under Rule 37. Hill v. State*, 275 Ark. 71, 628 S.W.2d 284, *cert. denied*, 459 U.S. 882 (1982). In *Sumlin v. State*, 273 Ark. 185, 617 S.W.2d 372 (1981), we said *an error may be argued for the first time on appeal in a death case only when it is "of such magnitude that it would require us to take note of an error which involved a fundamental deprivation of the right to a fair trial." Id.* at 192, 617 S.W.2d at 376.

*Id.* at 137, 900 S.W.2d at 951 (emphasis added). Accordingly, in death cases, this court may address issues raised for the first time on appeal from a denial of a Rule 37 petition, where prejudice is

conclusively shown by the record. Such prejudice is shown only when there is an error of such magnitude that it deprived the defendant of the fundamental right to a fair trial. Conversely, where prejudice is not conclusively shown, the issue is procedurally barred and we may not reach the merits. After reviewing the record in this case, we conclude that it does not conclusively show that Jones was prejudiced by the submission of this aggravating circumstance to the jury.

Arkansas Code Annotated § 5-4-604(8)(A) (Repl. 1997) provides for the aggravating circumstance that the "capital murder was committed in an especially cruel or depraved manner." Section 5-4-604(8) defines the relevant terms as follows:

> (B) For purposes of this subdivision (8), *a capital murder is committed in an especially cruel manner when, as part of a course of conduct intended to inflict mental anguish, serious physical abuse, or torture upon the victim prior to the victim's death, mental anguish, serious physical abuse, or torture is inflicted.* "Mental anguish" is defined as the victim's uncertainty as to his ultimate fate. "Serious physical abuse" is defined as physical abuse that creates a substantial risk of death or that causes protracted impairment of health, or loss or protracted impairment of the function of any bodily member or organ. "Torture" is defined as the infliction of extreme physical pain for a prolonged period of time prior to the victim's death.

> (C) For purposes of this subdivision (8), *a capital murder is committed in an especially depraved manner when the person relishes the murder, evidencing debasement or perversion, or shows an indifference to the suffering of the victim and evidences a sense of pleasure in committing the murder*[.] [Emphasis added.]

■■ This court has consistently held that whenever there is evidence of an aggravating or mitigating circumstance, however slight, the matter should be submitted to the jury for consideration. *See Willett v. State*, 335 Ark. 427, 983 S.W.2d 409 (1998); *Kemp v. State*, 324 Ark. 178, 919 S.W.2d 943, *cert. denied*, 519 U.S. 982 (1996); *Dansby v. State*, 319 Ark. 506, 893 S.W.2d 331 (1995). Once the jury has found that an aggravating circumstance exists beyond a reasonable doubt, this court may affirm only if the State has presented substantial evidence in support of each element therein. *McGehee v. State*, 338 Ark. 152, 992 S.W.2d 110 (1999). To make this determination, we review the sufficiency of the evidence in the light most favorable to the State to determine whether any rational

trier of fact could have found the existence of the aggravating circumstance beyond a reasonable doubt. *Kemp*, 324 Ark. 178, 919 S.W.2d 943.

Here, the evidence showed that Jones held Mary and her eleven-year-old daughter Lacy at gunpoint and took them to a back room. He told them to lie down on the floor, with Lacy on top of her mother. While they were on the floor, Jones took the money out of the business's cash register and asked if there was any more. Jones then tied up Mary with stereo-speaker wire and put her in a closet. Next, he tied Lacy to a chair in the bathroom. Jones left Lacy for some time and then returned to her. The intervening time is apparently when Jones raped and murdered Mary.

The medical examiner testified that Mary died as a result of a combination of strangulation and blunt-force head wounds. He testified that the application of force to the neck was in all likelihood relatively prolonged, taking approximately four minutes. Additionally, the evidence indicated that Mary had a number of wounds that appeared defensive in nature and consistent with some type of struggle taking place. The evidence also indicated that the blunt-force injuries to Mary's head likely occurred prior to the time she was strangled, due to the amount of blood around the brain, and that it was possible that she could have sustained consciousness throughout much of her injuries.

■ From these facts, there was substantial evidence that Jones committed the murder in an especially cruel manner. As she was bound with speaker wire, Mary was bludgeoned, anally raped, and strangled, while her young daughter sat, bound to a chair, in an adjoining room. Clearly, Mary was the victim of serious physical abuse. There was also substantial evidence that Mary suffered mental anguish at the hands of her killer, not only as the victim of the ordeal, but also as the mother of the next likely recipient of the same fate. Accordingly, the record does not show conclusively that trial counsel performed deficiently in failing to object to the submission of this aggravating circumstance to the jury. Nor does the record conclusively show that appellate counsel performed deficiently by not pursuing the issue on appeal. Indeed, from this record, it is not apparent that Jones was deprived of any right, much less the fundamental right to a fair trial.

*II. Aggravating Circumstance of Avoiding or Preventing Arrest*

For his second point for reversal, Jones argues that both trial and appellate counsel were ineffective for failing to object to the State's use of the aggravating circumstance that the capital murder was committed for the purpose of avoiding or preventing arrest. Jones again concedes that this issue was not raised in his Rule 37 petition. The order, however, reflects a ruling on this issue. Specifically, the trial court found that the submission of this aggravating circumstance was proper, and that appellate counsel's failure to argue otherwise did not meet the test of ineffective assistance of counsel. Accordingly, we will address the merits of this argument.

Jones relies primarily on this court's holding in *Kemp*, 324 Ark. 178, 919 S.W.2d 943, that although a consequence of every murder is the elimination of the victim as a potential witness, the motive is not necessarily to avoid arrest. From the record in this case, however, it is clear that there was sufficient evidence to support the jury's conclusion that Jones murdered Mary Phillips for the purpose of avoiding arrest for aggravated robbery. According to Lacy Phillips, Jones came to her mother's business twice on the date of the murder. The first time, Jones asked to borrow a book. Mary gave him the book. Later, Jones returned and informed Mary that she had given him the wrong book. When Mary went to get the other book, Jones pulled out a gun and said "I'm sorry I'm going to have to do this, but I'm going to have to rob you." After Jones had restrained both victims, he opened up the cash register and took all the money. Lacy indicated that she was able to get a good look at Jones. She remembered that Jones had black hair, tattoos on his arms, and a teardrop-shaped tattoo on his face. Lacy was able to describe her assailant to the police. She also clearly identified Jones at trial.

Based on the foregoing evidence, the jury could have concluded that Jones murdered Mary for the purpose of avoiding or preventing his arrest for the crime of aggravated robbery. The distinctiveness of Jones's appearance, including the many tattoos on his face and arms, as well as the fact that Mary had two separate opportunities to observe him, raises an inference that had she lived, Mary could have identified Jones as the man that robbed her and her daughter at gunpoint. *See Porter v. State*, 321 Ark. 555, 905 S.W.2d 835 (1995), *cert. denied*, 517 U.S. 1108 (1996) (holding that

the jury could have found beyond a reasonable doubt that Porter killed the victim to avoid being arrested for robbery, because of the nature of the victim's head wound and the fact that he had spoken to Porter outside the restaurant and could have identified him as one of the robbers); *Sanders v. State*, 308 Ark. 178, 824 S.W.2d 353 (1992), *cert. denied*, 513 U.S. 1162 (1995) (holding that the evidence showed beyond a reasonable doubt that the murder was committed for the purpose of avoiding or preventing arrest based on the evidence that the victims could have identified Sanders, because he had previously worked for them and had even been in their home). Accordingly, Rule 37 relief is not warranted on this point.

### III. Aggravating Circumstances Inconsistent with a Charge of Premeditated Murder

For his third point for reversal, Jones argues that trial counsel was ineffective for failing to object to the submission of the aggravating circumstances that the capital murder was committed (1) for pecuniary gain and (2) for the purpose of avoiding arrest. He argues that counsel should have objected on the ground that those aggravating circumstances were inconsistent with the charge that he committed the murder with premeditation and deliberation.

In his appeal brief, Jones concedes that he has found no authority to support his argument on this point. This alone is sufficient basis to affirm the judgment. *See McGehee*, 338 Ark. 152, 992 S.W.2d 110. Nevertheless, he contends that the submission of these aggravating circumstances amounted to a denial of due process. There is no merit to this contention. We agree with the State that the prosecution's theory of premeditation and deliberation during the guilt phase did not lead to a due-process violation when these aggravating circumstances were sought during the sentencing phase. The record reflects that the defense was made aware of all the aggravating circumstances that the State sought to prove during sentencing. Accordingly, Jones cannot now claim that he was misled by the State's theory of premeditation and deliberation. We thus affirm the trial court's denial of Rule 37 relief on this point.

## IV. Expert Testimony on Hair Analysis

Finally, Jones argues that the trial court erred in denying his petition on the ground that trial counsel was ineffective for failing to object to the State's introduction of expert testimony on the subject of hair analysis. The testimony in question was from Chantell Beckett, a criminalist with the Arkansas State Crime Laboratory. Beckett testified that she had examined one head hair, one head-hair fragment, and one pubic hair taken from Mary Phillips's body and compared them to known samples from Jones. She testified that the hairs were "microscopically similar." Jones contends that her testimony was both irrelevant and incompetent. We affirm because Jones has failed to demonstrate that his defense was prejudiced by this evidence.

Jones candidly concedes that counsel's failure to object to Beckett's testimony did not prejudice him during the guilt phase, ostensibly because the jury heard evidence of his confession to police, as well as the testimony of the surviving victim. He contends, however, that had this testimony been excluded, his sentence could have turned out differently. The fact that his sentence *could* have been different is not the standard. To prevail on a claim of ineffective assistance of counsel, the defendant must show that counsel's performance was deficient and that counsel's deficient performance prejudiced his defense. *Dillard*, 338 Ark. 571, 998 S.W.2d 750. Prejudice is shown only when the decision reached *would* have been different absent the errors. *Id.* We thus affirm the trial court's denial of postconviction relief.

Affirmed.

SMITH, J., not participating.

SUPPLEMENTAL OPINION ON DENIAL OF REHEARING
FEBRUARY 10, 2000

*Montgomery, Adams & Wyatt, PLLC,* by: *Dale E. Adams,* for appellant.

*Mark Pryor,* Att'y Gen., by: *Darnisa Evans Johnson,* Senior Ass't Att'y Gen., and *Teena L. Watkins,* Ass't Att'y Gen., for appellee.

DONALD L. CORBIN, Justice. Our decision affirming the trial court's order was delivered on January 6, 2000. Appellant filed a petition for rehearing on January 24, 2000. In the petition, Appellant asserts that we erred as a matter of law by applying the wrong standard for showing prejudice on a claim of ineffective assistance of counsel. Our opinion reflects in part:

> Jones candidly concedes that counsel's failure to object to Beckett's testimony did not prejudice him during the guilt phase, ostensibly because the jury heard evidence of his confession to police, as well as the testimony of the surviving victim. He contends, however, that had this testimony been excluded, his sentence could have turned out differently. The fact that his sentence *could* have been different is not the standard. To prevail on a claim of ineffective assistance of counsel, the defendant must show that counsel's performance was deficient and that counsel's deficient performance prejudiced his defense. *Dillard,* 338 Ark. 571, 998 S.W.2d 750. Prejudice is shown only when the decision reached *would* have been different absent the errors. *Id.*

*See Jones v. State,* 340 Ark. 1, 10, 8 S.W.3d 482 (2000). Appellant asserts that the test under *Strickland v. Washington,* 466 U.S. 668 (1984), is not that the outcome would have been different, but that there is a reasonable probability that the outcome would have been

different. Appellant is correct in his recitation of the standard established in *Strickland*. His argument, however, misses the point of our holding.

Our decision affirming the trial court's denial of relief under Ark. R. Crim. P. 37 was not based on the degree to which Appellant failed to show that the outcome of his case would have been different. Rather, we affirmed because Appellant did not even use the word "would" in his argument to this court. He merely argued that "[i]n this case the proceeding could have turned out differently[.]" His argument was thus nothing more than a contention that the result *might possibly* have been different. This is insufficient under *Strickland*, as the Court observed that "not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding." 466 U.S. at 693.

■ Accordingly, we deny rehearing of this case. We issue this supplemental opinion for the purpose of clarifying for future cases that the standard for showing prejudice on an ineffective-assistance-of-counsel claim is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

SMITH, J., not participating.